THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY HENDERSON, Defendant-Appellant.

Fifth District   No. 5—90—0496

Opinion filed July 15, 1992.

Daniel M. Kirwan and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert Haida, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

After a jury trial, defendant, Larry Henderson, was found guilty of theft over $300 in violation of section 16—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(1)). The circuit court of St. Clair County sentenced defendant to two years' probation and ordered defendant to pay $1,510 to reimburse the public defender and $990 in fines, to be taken from the $2,500 cash bond defendant posted. Defendant appeals from the judgment, contending: (1) that the State failed to prove defendant was guilty beyond a reasonable doubt; and (2) that the trial court erred in ordering defendant to reimburse the public defender in the amount of $1,510 and in imposing a $990 fine where there was no determination of defendant's ability to pay.

On April 29, 1989, at approximately 8:30 p.m., two black males entered Stuarts II, a retail clothing store in St. Clair Square, a shopping mall located in Fairview Heights. Regina Massey-Middlebrook, the store's assistant manager, was working that evening when she noticed one of the men looking in her direction and acting suspicious. As she approached the man, he walked toward his companion standing several feet away. The first man rolled up some clothing, put it into a plastic bag he was carrying, and started to leave the store. Middlebrook told another employee to call the police and pursued the men herself. She caught up with the one holding the merchandise just outside the store entrance and grabbed his right arm. He then dropped the bag containing the clothing and ran out of the mall. Middlebrook decided not to pursue the second man and returned to Stuarts II to call the police. She described the shoplifters to the police dispatcher as two black males, one very dark complected with a white sweatsuit and the other one wearing a red, white and black jogging suit. Shortly thereafter, mall security guards Darin Clifton and Kevin Weis-

sert arrived and obtained a different description of the two men from Middlebrook. She reported that there were two black males involved in the theft, the first one standing approximately 6 feet 3 inches tall, wearing black jeans and a sweatshirt, and the second man standing approximately 5 feet 6 inches tall, wearing a red and white sweatsuit. Weissert and Clifton immediately began searching the area and were directed by three unidentified females to an unoccupied brown Cadillac owned by defendant. The security guards observed defendant and his three children enter the car and leave the parking lot. The security guards determined that defendant closely resembled Middlebrook's description of one of the shoplifters, and they notified Fairview Heights police as to what they had seen. Officer Jeffrey Blair of the Fairview Heights police department responded to Middlebrook's call and went to Stuarts II to obtain information about the incident. Middlebrook described the shoplifters as two black males, one standing approximately 6 feet tall, weighing 170 pounds with a slim build, wearing a white jogging outfit with a red baseball cap. The other man was described as 5 feet 5 inches tall, wearing a white, red and black shirt or jacket and a baseball cap. During his conversation with Middlebrook, Officer Blair received information from the radio dispatcher that security guards Clifton and Weissert reported seeing a brown Cadillac in the parking lot containing two men who closely resembled the shoplifters Middlebrook described. At that time, Blair located and pursued defendant through the mall parking lot, followed defendant's car out of the lot, and pulled him over in a White Castle parking lot. Sergeant Gary Reimann arrived at the scene to assist Blair. Defendant was handcuffed and put into the back seat of Reimann's car while Blair went back to the mall to get Middlebrook. Blair brought Middlebrook and Andrea Dennison, another Stuarts II employee, to Reimann's car. Middlebrook identified defendant as one of the shoplifters, and he was taken into custody.

On May 2, 1989, defendant was charged by criminal complaint with theft over $300. On May 4, 1989, defendant posted $1,000 bond and retained private counsel to enter his first appearance. Defendant's private counsel withdrew on September 15, 1989, and a public defender was appointed. Subsequently, the public defender filed a motion to withdraw, stating that since defendant had posted $1,000 bond, defendant was not indigent and the public defender's office could not represent him. The public defender's motion was heard on October 16, 1989. At the hearing, defendant stated that he had not posted the bond money himself and he was not authorized to use the money for attorney fees. Defendant further stated that he would

rather proceed *pro se* than to take a chance that the bond would be used to reimburse the public defender. Defendant explained that he was unemployed with no source of income and no assets, and he would be unable to pay his mother back if the bail money was not returned to her. Despite defendant's protestations, however, the court denied the public defender's motion to withdraw and told him to keep track of his time for possible reimbursement of fees. A jury trial commenced March 15, 1990, and a mistrial was declared when the jury was unable to reach a unanimous verdict. Defendant's bond was increased on April 27, 1990, and defendant posted an additional $1,500. Defendant's second trial began June 19, 1990, at which time defendant and two of his children testified. Defendant stated that on the evening of April 29, 1989, he went to St. Clair Square Shopping Mall with his three children, Larry, Jr., Eric, and Mica. He testified that he was wearing a dark denim jacket, dark denim pants and a white T-shirt, and Larry, Jr., was wearing shorts and a T-shirt. Once inside the mall, defendant and his children started playing a game of tag, which consisted of Eric and Mica tagging defendant and Larry, Jr., and then running from them. Defendant testified that he and Larry, Jr., were separated from Eric and Mica for just a short time before they all left. Defendant stated that he never entered Stuarts II on April 29, 1989. Larry, Jr., corroborated defendant's testimony that the Hendersons were at the mall on April 29, 1989, that they played tag, that he was never separated from his father while they were at the mall, and that neither he nor his father stole any merchandise from Stuarts II. The jury found defendant guilty of theft over $300, based solely on the eyewitness testimony of Regina Massey-Middlebrook.

In this appeal, defendant first contends that the State failed to prove him guilty beyond a reasonable doubt. Defendant argues that the only evidence linking him with the theft is Middlebrook's testimony, and her identification of defendant is not credible because her descriptions of the shoplifters on the night of the theft were inconsistent and none of the differing descriptions closely matched defendant's appearance that evening. The State argues that Middlebrook's identification of defendant was credible because she had an opportunity to see defendant at close range when she followed him out of the store and grabbed his arm. The State further argues that Middlebrook's descriptions were, in fact, consistent and clear.

The testimony of a single witness may be sufficient to support a conviction, but the identification must be positive and credible. (*People v. Hefner* (1979), 70 Ill. App. 3d 693, 388 N.E.2d 1059.) In *Neil v.*

*Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375, and *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, the United States Supreme Court set out five factors used to determine the reliability of an identification. These factors, as adopted by our supreme court in *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, are the witness' opportunity to view the perpetrator at the time of the offense, the witness' degree of attention, the accuracy of the description of the accused given by the witness, the certainty with which the witness identifies the accused, and the length of time between the crime and the confrontation. 67 Ill. 2d at 571, 367 N.E.2d at 1317.

■ In the case before us, the witness, Regina Massey-Middlebrook, had an opportunity to view the perpetrator for several minutes after she saw him acting suspiciously in the store and when she grabbed his arm, prompting him to drop the bag of clothing. She testified that her attention was firmly set on the perpetrator from the moment she noticed him and his companion in the store until after she chased him out of the store into the mall area. When she was taken to the White Castle parking lot to identify defendant, it was less than 15 minutes after the perpetrator had left the store, and her identification of defendant as the perpetrator was positive, without reservation or doubt. When applying the facts of this case to the five factors we must consider, we are satisfied that four of the five factors, the opportunity of the witness to view the criminal at the time of the offense, the witness' degree of attention, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation, have been met. Only the remaining factor, the accuracy of Middlebrook's description of the offender, warrants further discussion.

Defendant argues that Middlebrook gave conflicting and inconsistent descriptions of the shoplifters to the police, the police dispatch, and the security guards on the night of the theft, making her identification unreliable. During the testimony of Middlebrook, Clifton, Weissert and Blair, defense counsel questioned the witnesses about the various descriptions provided that night, using excerpts of the police reports, security reports and the dispatch transcript to impeach or refresh the memory of the witnesses. The documents themselves are not included in the record, however, which makes it impossible to determine what the full text of these documents were and the context of the excerpts used by counsel at trial. Therefore, we must limit our analysis of Middlebrook's descriptions to what was testified to while

considering that such statements may not represent an exact depiction of how Middlebrook described the shoplifters on April 29, 1989.

Based on the evidence adduced at trial, Middlebrook's descriptions of the offender's height varied from 6 feet to 6 feet 3 inches. She told Clifton that the taller of the two men was approximately 6 feet 3 inches tall, she told Blair he was 6 feet tall, and she stated at trial that he was 6 feet 2 inches tall. Her descriptions of the man's clothing also varied from each other and from what defendant was actually wearing upon his arrest. She consistently described his build as being slim, however, and closely estimated his weight. Where "the evidence is irreconcilably conflicting, it is the peculiar prerogative of the trier of fact *** to ascertain the truth." (*People v. Hammond* (1970), 45 Ill. 2d 269, 278, 259 N.E.2d 44, 48.) A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of evidence or the credibility of the witnesses, and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. *People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631, 634.

Looking at the totality of circumstances under which defendant was identified, we find Middlebrook's identification to be not so improbable to require a reversal. She had an opportunity to see the shoplifter at the time of the offense, her attention was clearly focused on him as she chased him and grabbed his arm, and she was certain about the identity of defendant as the offender only 15 minutes later. Therefore, we decline to disturb the jury's finding that Middlebrook's testimony was more reliable and credible than the conflicting testimony by defendant and his children.

We now turn to defendant's contention that the trial court erred in ordering defendant to reimburse the public defender in the amount of $1,510 and imposing a $990 fine, both of which were to be paid from bail posted by defendant, without a determination of defendant's ability to pay. Under section 113—3.1(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 113—3.1(a)), the court can order defendant to pay the clerk of the circuit court a reasonable sum to reimburse the county or the State for appointed counsel. The statute provides, in pertinent part:

> "In a hearing to determine the amount of the payment, the court shall consider the affidavit prepared by the defendant *** and any other information pertaining to the defendant's financial circumstances which may be submitted by the parties. Such hearing shall be conducted on the court's own motion or on motion of the State's Attorney at any time after the appointment

of counsel but no later than 90 days after the entry of a final order disposing of the case at the trial level." (Ill. Rev. Stat. 1989, ch. 38, par. 113—3.1(a).)

Defendant argues that the trial court erred in not conducting an evidentiary hearing to determine the amount of reimbursement. Defendant specifically argues that the court should have considered defendant's present or future ability to pay, the interests of defendant's mother, who posted bond on his behalf, and defendant's stated preference of proceeding *pro se* rather than having his cash bond used for attorney fees. As stated earlier, defendant retained private counsel to enter his first appearance, but private counsel withdrew after that, and defendant requested the appointment of a public defender. The public defender was appointed, but he filed a motion to withdraw, stating that since defendant posted $1,000 bond he was not indigent and the public defender's office could not represent him. At the hearing on the public defender's motion to withdraw, defendant made it clear that his mother posted the bail money and he did not want it to be used for attorney fees. Defendant stated that he was unemployed, with no source of income and no assets. When defendant was informed that his bail money may be used to reimburse the public defender, he stated that he would rather proceed *pro se* than to take that chance. At that time, the trial court denied the public defender's motion to withdraw but told him to keep track of his time for possible reimbursement of fees. After defendant failed to appear at a later hearing, his bail was increased and he posted an additional $1,500, increasing the total bail defendant posted to $2,500. The trial court did not hold a hearing to determine the amount of fees the public defender would receive or defendant's financial circumstances. The trial court simply entered an order at the sentencing hearing that defendant would reimburse the county in the amount of $1,510. No evidence was heard on the reasonableness of the fees, nor was evidence heard on defendant's present or future ability to pay such costs. The court arrived at the $1,510 figure by multiplying the public defender's submitted hours worked by $30 for time spent out of court and $40 for time spent in court. The State argues that a hearing to determine the amount of reimbursement of attorney fees to the county was not required in this case because the figure imposed for reimbursement was reasonable. The State's conclusion that the fees calculated and submitted by the public defender were reasonable does not necessarily make it so. Although in his reply brief defendant concedes that defense counsel's services were worth $1,510, defendant argues that the amount of recoupment does not depend solely on the amount of fees

considered reasonable. As defendant correctly points out, a hearing is mandated by section 113—3.1 in which the trial court *"shall* consider the affidavit prepared by the defendant \*\*\* and any other information pertaining to the defendant's financial circumstances." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, par. 113—3.1(a).

That leads us to defendant's assertion that a hearing should have been held to determine defendant's present or future ability to pay $1,510 in attorney fees. The State responds that a hearing to determine defendant's present or future ability to pay attorney fees is not required when defendant posts a cash bond greater than or equal to the amount of the recoupment order, because posting bond is sufficient evidence of defendant's ability to pay. In support of these assertions, the State cites *People v. Nunez* (1990), 197 Ill. App. 3d 332, 553 N.E.2d 1123, *People v. Baker* (1990), 195 Ill. App. 3d 785, 552 N.E.2d 421, and *People v. Brown* (1987), 154 Ill. App. 3d 692, 506 N.E.2d 1059.

In *Nunez,* the trial court scheduled a hearing on the motion for attorney fees, and defendant was duly notified but failed to appear. The trial court found that defense counsel, a private attorney appointed by the court to represent the defendant, devoted 11 hours to the defendant's case and calculated attorney fees at $75 per hour. A finding of the defendant's ability to pay was based on the $1,500 cash bond posted on his behalf, and the trial court ordered the defendant to pay $875 in attorney fees to be paid from the defendant's bond. On appeal, the Fourth District Appellate Court upheld the trial court's order, finding that the bond was evidence of the defendant's ability to pay. (*Nunez,* 197 Ill. App. 3d at 338, 553 N.E.2d at 1127.) The defendant in *Nunez* also failed to object to or make any statement regarding an assessment that might be made against him for the services of court-appointed counsel. We do not find *Nunez* instructive on the case before us for two reasons. First, the *Nunez* defendant was given a hearing at which he declined to appear, whereas defendant in the present case was not afforded that opportunity. Second, defendant in this case made it quite clear to the trial court that he would rather proceed *pro se* than to have his bond applied to attorney fees.

We also find *Baker* distinguishable from the case at bar. In *Baker,* the Fourth District Appellate Court upheld the trial court's order that the defendant pay $200 in attorney fees without a hearing. (*Baker,* 195 Ill. App. 3d at 796, 552 N.E.2d at 429.) In that case, however, the court found it significant that the trial judge who entered the recoupment order presided over the multiple pretrial hearings, the jury trial, the post-trial motion hearing and the sentencing hearing. (195 Ill.

App. 3d at 792, 552 N.E.2d at 426.) Therefore, the court found that the trial court was not required to hold a formal hearing on the reasonableness of the order. Here, there were three separate judges involved in the proceedings against defendant. The first judge presided over the pretrial hearings where defendant made it clear that he was indigent and his mother posted bond for him. A second judge presided over defendant's first trial, and a third judge presided over defendant's second trial, post-trial motion hearing and sentencing hearing. One judge was not in a position to take notice of the entirety of proceedings against defendant. Additionally, although the defendant in *Baker* claimed on appeal that his parents had posted his bond, a fact which the trial court should have considered, the defendant failed to bring that fact to the attention of the trial court. (195 Ill. App. 3d at 792, 552 N.E.2d at 426.) The court also found it significant that defendant failed to comment that the recoupment order would financially burden him when he was given an opportunity to do so at the time the order was entered. 195 Ill. App. 3d at 796, 552 N.E.2d at 429.

Finally, *Brown* fails to support the State's position because the *Brown* court simply held that it is unnecessary to specifically spell out the county's costs such as office rental, salaries, books, equipment, supplies and transportation in a reimbursement hearing. (*Brown*, 154 Ill. App. 3d at 696, 506 N.E.2d at 1062.) The court did not find it unnecessary for a hearing to be held at all, however, and stated that the trial court must still hear evidence on the reasonableness of reimbursement fees. 154 Ill. App. 3d at 696, 506 N.E.2d at 1061.

■ We agree with defendant that section 113—3.1(a) mandates a hearing on the reasonableness of attorney fees for court-appointed counsel. At that hearing, the court must consider defendant's financial circumstances to determine if recoupment is appropriate. Furthermore, under section 113—3.1(c), "[t]he court may give special consideration to the interests of relatives or other third parties who may have posted a money bond on the behalf of the defendant to secure his release." (Ill. Rev. Stat. 1989, ch. 38, par. 113—3.1(c).) The trial court may exercise its discretion on whether to consider defendant's mother's interest in the bond. Accordingly, we find that the trial court erred by not conducting a hearing on the reasonableness of the amount of payment for court-appointed counsel, vacate the order imposing reimbursement of attorney fees, and remand for a hearing on defendant's ability to pay the reimbursement fees.

■ Finally, we turn to defendant's contention that the trial court erred in imposing a $990 fine on defendant because there was no evi-

dence that he had the ability to pay such a fine. Defendant correctly points out that although a formal hearing is unnecessary, there must be facts on the record to show defendant's ability to pay restitution. (*People v. Johnson* (1982), 106 Ill. App. 3d 171, 435 N.E.2d 799.) We find no facts in the record to support defendant's ability to pay a $990 fine. Defendant stated at a pretrial hearing that he was unemployed and without assets, his State assistance had been discontinued, and his mother posted bond. At the sentencing hearing, defendant stated that he had part-time employment at his mother's place of business, but there was no evidence heard on his wages or salary. Therefore, the trial court erred in imposing a fine of $990 on defendant without knowing defendant's financial circumstances. We hereby vacate the order imposing a $990 fine and remand the cause for a hearing to determine defendant's financial resources.

For the foregoing reasons, the judgment of the circuit court of St. Clair County finding defendant guilty of theft over $300 is affirmed, the orders requiring defendant to pay $1,510 in attorney fees and a $990 fine are vacated, and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; vacated in part; and remanded.

H. LEWIS and CHAPMAN, JJ., concur.