679 N.E.2d 812 (1997)
288 Ill. App.3d 109
223 Ill.Dec. 361
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Steven A. HANNA, Defendant-Appellant.
No. 4-95-0881.
Appellate Court of Illinois, Fourth District.
May 2, 1997.
*813 Daniel D. Yuhas, Deputy Defender, Office of State Appellate Defender, Court Appointed, Springfield, Martin J. Ryan, Asst. Deputy Defender, Office of State Appellate Defender, Springfield, for Steven A. Hanna.
Barney S. Bier, State's Atty., Norbert J. Goetten, Director, State's Attys. Appellate Prosecutor, Robert J. Biderman, Deputy, Director, State's Attys. Appellate Prosecutor, David E. Mannchen, Staff Atty., State's Attys. Appellate Prosecutor, Springfield, for People.
Justice GARMAN delivered the opinion of the court:
Following a jury trial in the circuit court of Adams County, defendant Steven Hanna was convicted of unlawful possession of less than 200 grams of a substance containing methamphetamine (720 ILCS 570/402(c) (West 1992)) and driving while his driver's license was revoked (DWR) (625 ILCS 5/6-303(a) (West 1992)). He was sentenced to a term of six years' imprisonment on the drug conviction and a concurrent term of 364 days in jail on the DWR conviction. Defendant appeals, arguing that (1) the State failed to prove beyond a reasonable doubt that the substances found in his possession were in fact controlled substances; (2) a limited remand is necessary to determine whether he was denied due process of law by the failure to afford him a fitness hearing, where he was ingesting psychotropic drugs during the pendency of the case; and (3) the trial court *814 erred in ordering him to pay $300 toward the fees of his appointed counsel. We affirm.
After first waiving counsel, defendant requested that counsel be appointed for him. At a hearing on this issue, defendant testified that he was self-employed in the automotive business, but his garage burned down and he was currently without any source of income. The garage was not insured. Due to injuries sustained in the fire, he is not able to work and is applying for disability payments. His home is worth between $8,000 and $12,000 and he owes approximately $3,000 in pastdue real estate taxes on it. He also owns a vacant lot in joint tenancy with another person valued at approximately $500. He has a bank account with a balance of approximately $11. He owes approximately $5,000 to his father and approximately $4,500 to people who lost vehicles in his garage fire. His wife posted his bond of $1,200. She did not sign a bond assignment. The trial court appointed counsel for defendant and advised him that should he gain income or assets, he could be required to repay the county for the cost of the public defender.
Defendant represented himself at trial, with his appointed counsel acting as standby counsel. Testimony for the State indicated that defendant was seen driving a truck and a check of his driver's license revealed that it had been revoked. Police officers arrested him at a donut shop. He was handcuffed and officers conducted a custodial search. In one of defendant's pockets, the officers found an open package of cigarettes. Two cigarettes were in the package, but the officers noticed that the package felt heavier than it should with only two cigarettes in it. The package contained a small vial with a screw cap, a small, clear plastic baggie with a whitish-brown powdery substance inside and a piece of newsprint commonly referred to as a "snow seal," which is usually used to carry illegal drugs. Inside the snow seal was a whitish-brown powdery substance. Such a substance is sometimes known to be methamphetamine. Defendant told the officers the substance in the vial was his nitroglycerin. He asked that a waitress at the donut shop keep all his personal effects, but the officers refused. Prior to the search, defendant said he felt sick and asked to go to the bathroom, but that request was also refused. One officer conducted a field test on the powdery substance. The substance in the vial did not test positive for methamphetamine, but the substances in the snow seal and baggie tested positive.
Nancy Antonaccio, a forensic scientist for the Illinois State Police who specializes in drug chemistry, testified that she performed preliminary and confirmatory tests on the substances. The preliminary test indicated that a stimulant could be present. She then performed an infrared spectrophotometer test, which is a confirmatory test, on each substance. The substances all contained methamphetamine hydrochloride, which is a controlled substance. An over-the-counter preparation, the "Vicks Inhaler," also contains methamphetamine. It must be in the inhaler to be an exempted substance in Illinois.
On cross-examination, Antonaccio stated that there are different isomers in methamphetamine, referred to as "D" and "L." Those letter designations refer to the rotation of the molecule as either "dextro-" or "levo-." Both are controlled substances in Illinois. There is a test available to distinguish between the D and L isomers, but she did not perform this test on the substances in question. The substance in the Vicks inhaler contains an L isomer; she is not aware of any other over-the-counter medication that contains methamphetamine with either the D or L isomer.
Daniel Brown, a privately employed toxicologist, testified for the defense that he reviewed the report prepared by Antonaccio. His conclusion is that her findings do not necessarily indicate the presence of a controlled substance in the items tested. Methamphetamine is a stimulant, and it is sometimes prescribed by doctors for different uses. L methamphetamine is available in inhalers used for cold medications. Vicks makes the inhalers, and it also makes inhalers for pharmacies such as Walgreen's and Hook's, which then sell them under their own names. Since no test was completed to determine whether D or L methamphetamine was present in the substances tested by Antonaccio, *815 Brown has no way of knowing whether the substances tested were controlled substances. Brown testified he has no knowledge of whether the controlled-substances law distinguishes between D and L methamphetamine. The federal government has exempted the Vicks inhaler from its list of controlled substances because it does not produce the euphoria and stimulation that D methamphetamine does; it simply dries up the nasal passages and opens the sinuses. The L methamphetamine is usually found in the inhaler form, although it is possible to take several inhalers, extract the drug from them, and crystallize the drug back to a street-drug form. However, it is Brown's understanding that since it is L methamphetamine, it would still not be a controlled substance, although he admitted he did not review the federal statutes before his testimony and he is not an attorney. Brown was shown a copy of federal regulations listing the Vicks inhaler as an excluded substance.
Brown testified that the Vicks inhaler is the only excluded methamphetamine substance. The other excluded substances are mainly phenobarbital. He is unaware of any form of the L methamphetamine available for over-the-counter medications other than the Vicks inhaler.
Defendant testified that he has a heart condition and has used small amounts of methamphetamine for medicinal purposes. He also takes nitroglycerin. He admitted he drove the truck on the night in question but denied that his driver's license was revoked. Defendant admitted purchasing controlled substances over the last few years but stated that they were for his heart condition. He does not use drugs to get "high." He admitted having the methamphetamine in his possession when he was arrested.
On cross-examination, defendant stated that within the last 10 years he had convictions for residential burglary and burglary and had spent time in the Department of Corrections (DOC).
Antonaccio testified in rebuttal that under Illinois law both D and L methamphetamine are controlled substances unless they are on the list of excluded substances. That list includes the Vicks inhaler; the substance must be in the inhaler. The substances found on defendant are not excluded and are controlled substances. The state and federal exclusions are the same.
Following conclusion of all evidence, the jury returned verdicts of guilty on both counts. Defendant's post-trial motion was denied and he was sentenced as stated. This appeal followed.
Defendant first argues that the State failed to prove beyond a reasonable doubt that the substances found in his possession were in fact controlled substances because there was no proof that the methamphetamine contained the D isomer. Defendant contends that methamphetamine containing the L isomer is not a controlled substance under Illinois law.
A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. People v. Collins, 106 Ill.2d 237, 261, 87 Ill.Dec. 910, 919, 478 N.E.2d 267, 276 (1985). When presented with a challenge to the sufficiency of the evidence, a reviewing court will sustain a criminal conviction if "`after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Emphasis in original.) Collins, 106 Ill.2d at 261, 87 Ill.Dec. at 920, 478 N.E.2d at 277, quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).
In order to prove defendant guilty of unlawful possession of a controlled substance, the State must prove beyond a reasonable doubt that the substance possessed by the defendant is in fact a controlled substance. This is normally accomplished through chemical testing and expert testimony. However, where sufficient circumstantial evidence exists to convince a fact finder beyond a reasonable doubt that the substance defendant possessed is indeed a controlled substance, expert testimony is not always required. See People v. Eichelberger, 189 Ill.App.3d 1020, 1027, 137 Ill.Dec. 520, 524, 546 N.E.2d 274, 278 (1989); People v. *816 Ortiz, 197 Ill.App.3d 250, 255, 143 Ill.Dec. 481, 485, 554 N.E.2d 416, 420 (1990).
Defendant cites section 214 of the Illinois Controlled Substances Act (Act) (720 ILCS 570/214 (West 1992)), which excludes from all schedules of the Act those substances excluded from the schedules of the Federal Controlled Substances Act (21 U.S.C. § 801 et seq. (1994)), pursuant to section 1308.22 of title 21 of the Code of Federal Regulations (Code) (21 C.F.R. § 1308.22 (1994)). That section of the Code excludes "I-Desoxyephedrine" (21 C.F.R. § 1308.22 (1994)), which is a diluted isomer of methamphetamine. United States v. Martinez, 950 F.2d 222, 223 (5th Cir.1991). This substance is contained in the Vicks inhaler. Defendant argues that under the plain language of the regulation, it is the substance itself which is excluded, not the container in which it is held. He further complains that any other interpretation would effectively criminalize possession of L methamphetamine contained in inhalers other than the Vicks-brand inhaler. We find no merit in defendant's argument. The regulation clearly states that the "Vicks Inhaler" manufactured by Vicks Chemical Company may be lawfully sold over the counter without a prescription and is therefore excluded from all schedules. 21 C.F.R. § 1308.22 (1994). The form of the product excluded is designated as the inhaler. The Vicks inhaler is one of several products listed in the regulation, all designated by brand name, manufacturer, and the form in which the substance may be used. The regulation could not be more clear. As to defendant's argument that the regulation would punish those in possession of inhalers containing methamphetamine other than the Vicks brand, we note that this is purely a hypothetical argument not available to defendant here. He was not charged with possession of a substance contained in an inhaler. See People v. Wisslead, 108 Ill.2d 389, 397, 92 Ill.Dec. 226, 229, 484 N.E.2d 1081, 1084 (1985).
We also disagree with defendant's argument that methamphetamine with the L isomer is not a controlled substance under Illinois law. It is irrelevant which isomer is present; methamphetamine is a controlled substance unless used in the approved form, i.e., in the Vicks inhaler. The removal of the over-the-counter form of L methamphetamine found in the Vicks inhaler from the schedule of banned controlled substances did not result in the removal of methamphetamine in general from the list of proscribed controlled substances. Martinez, 950 F.2d at 223; United States v. Walker, 960 F.2d 409, 414-15 (5th Cir.1992); United States v. Durham, 941 F.2d 886, 889 (9th Cir.1991).
Even if we agreed that the State failed to prove the illegality of the substance through chemical testing, we would find the circumstantial evidence sufficient to meet the State's burden. Defendant admitted at trial that the substances in his possession were in fact methamphetamine. He testified that he had bought methamphetamine in the past from people on the street and that he used it for medicinal purposes. When he was first arrested and the officers began to search him, he attempted to get the officers to allow him to use the rest room, which could be interpreted as a desire to dispose of the methamphetamine before the officers found it on his person. When the vial was found, defendant told the officers the substance it contained was his nitroglycerin. He then attempted to convince the officers to allow a waitress at the donut shop to keep his personal effects for him. The manner in which defendant carried some of the substances also tended to support the inference that the substances were illegal. For instance, one of the officers testified that in his experience a snow seal was indicative of illegal drugs. There was no evidence that defendant used the substances for any purpose that a Vicks inhaler would be used and, as stated earlier, this is the only nonprescription legal use of methamphetamine. Thus, we reject defendant's argument that he was not proved guilty beyond a reasonable doubt of possessing a banned controlled substance.
Defendant next argues that a limited remand is necessary to determine whether he was denied due process of law by the failure to afford him a fitness hearing because he was ingesting psychotropic drugs during the pendency of the case. He points to isolated references to psychotropic medications *817 in medical records from Blessing Hospital, which were presented to the trial court at sentencing. According to defendant, the records show he had a cardiac catheterization in February 1994 and again in June 1995, for which Valium was prescribed. In March 1994 he was given Elavil. In January 1995, defendant was given Librium in connection with burns he received in his garage fire. Defendant was charged with the instant offenses in November 1994, his trial took place in September 1995, and he was sentenced in November 1995. Defendant argues that since it is not clear whether he was still taking these medications at a time proximate to his trial and sentencing, the limited remand is necessary to determine whether he should have received a fitness hearing.
Section 104-21(a) of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/104-21(a) (West 1992)), in effect at the time of defendant's arrest, provides that a defendant receiving psychotropic medications under medical direction is entitled to a hearing on the question of his or her fitness while under the medication. Failure to provide this hearing results in a denial of due process and requires reversal of the conviction and a new trial. People v. Birdsall, 172 Ill.2d 464, 476, 219 Ill.Dec. 22, 28, 670 N.E.2d 700, 706 (1996). In the event it cannot be determined whether defendant's ingestion of psychotropic drugs was sufficiently proximate in time to trial or sentencing, a limited remand is required to determine this factual issue. People v. Kinkead, 168 Ill.2d 394, 415, 214 Ill.Dec. 145, 154, 660 N.E.2d 852, 861 (1995).
We disagree with defendant's contention that the existence of the above-noted isolated references in his voluminous hospital records is sufficient to trigger a remand for a determination of whether he was entitled to a fitness hearing. The records consist of approximately 200 pages of handwritten and typewritten entries from defendant's various hospitalizations. Defendant stated he was tendering the records in mitigation in connection with his heart condition. The trial court commented that since the State did not intend to put on any contrary evidence, the court would simply give credence to defendant's oral statements concerning his condition. Defendant then asked that the court send the records on to the DOC should he be incarcerated there. The court indicated the records would be made a part of the presentence report and, for that reason, it would take a look at the records. There is nothing in the presentence report that shows defendant was taking any medication at the time of sentencing. Defendant was incarcerated in the county jail between his conviction and sentencing, and the jail report does not indicate he was taking any medication while there.
The last time defendant took any of these drugs was in June 1995, three months prior to his trial. At that time, he took Valium, which was prescribed as a preoperative medication, prior to a specific medical procedure. There is nothing in the record to suggest that defendant continued taking Valium (or any other psychotropic drug) after that procedure was completed. We are not willing to assume, absent some evidence, that defendant continued taking psychotropic drugs after June 1995. Thus, no remand is necessary.
Defendant's last argument is that the trial court erred in ordering him to pay $300 toward the fees of his appointed counsel without an evidentiary hearing to determine whether he was able to pay any of the fees and what amount was reasonable.
The trial court may order a defendant to pay a reasonable sum in reimbursement to the county or state when the court has appointed counsel for the defendant. The court is to conduct a hearing on the issue of reimbursement and is to consider the defendant's financial affidavit and any other information that may be relevant. The court may order payment from any cash bond posted for defendant and, in doing so, may give consideration to the interests of third parties who may have supplied the money to post the bond. 725 ILCS 5/113-3.1(a),(c) (West 1992).
The State notes, and we agree, that defendant has waived any consideration of this issue because he failed to object to the trial court's reimbursement order and include *818 the claim of error in his post-trial motion. See People v. Enoch, 122 Ill.2d 176, 186, 119 Ill.Dec. 265, 271, 522 N.E.2d 1124, 1130 (1988). Regardless of waiver, however, we would reject defendant's argument on its merits. This court has previously addressed this issue in People v. Baker, 195 Ill.App.3d 785, 142 Ill.Dec. 71, 552 N.E.2d 421 (1990), and People v. Nunez, 197 Ill.App.3d 332, 143 Ill.Dec. 137, 553 N.E.2d 1123 (1990). In Baker, defendant was ordered to pay $200 toward fees of his court-appointed counsel, and the trial court ordered that amount to be paid from defendant's $300 cash bond. No hearing was held on the question of reimbursement. On appeal, defendant claimed that this was error. He argued that his bond had been posted by relatives and that the court should have conducted a hearing on the issue of his personal financial ability to pay the fees. This court rejected defendant's arguments and held that a cash bond posted to secure a defendant's release is definitive proof that the defendant has the ability to pay a recoupment order at least to the extent the order does not require payment of a sum larger than the amount of the bond. In such situations, no further evidence of a defendant's ability to pay is required. Baker, 195 Ill.App.3d at 796, 142 Ill.Dec. at 78, 552 N.E.2d at 428.
This court reaffirmed Baker in the Nunez case, where the defendant was ordered to pay $875 toward his appointed counsel fees, to be deducted from his $1,500 cash bond. A hearing on the question of reimbursement was held in that case, but defendant failed to appear. On appeal, defendant argued that he could not pay the bond. This court rejected that argument, citing Baker and noting that defendant's argument was "peculiar," since defendant had already paid the recoupment order through his bond. No further evidence beyond the fact of posting the bond was required to support the order. Nunez, 197 Ill.App.3d at 336, 143 Ill.Dec. at 140, 553 N.E.2d at 1126.
We find this case is controlled by Baker and Nunez. We are aware that other districts of the appellate court have decided this issue differently. See People v. Henderson, 232 Ill.App.3d 230, 173 Ill.Dec. 213, 596 N.E.2d 837 (1992); People v. Webb, 276 Ill.App.3d 570, 213 Ill.Dec. 103, 658 N.E.2d 852 (1995). However, we decline defendant's invitation to reconsider Baker and Nunez, as we believe these cases are soundly reasoned. Defendant also argues the trial court erred in setting the amount of reimbursement at $300 without a hearing as to the amount of time spent by counsel on defendant's case. Counsel was either acting as defendant's attorney of record or as standby counsel throughout almost the entire pendency of the proceedings. There were several pretrial hearings on motions and the jury trial lasted two days. The trial court could certainly determine, without evidence, that these services were worth at least $300. In fact, the court indicated it purposely selected a figure far less than anything that could ever be justified for counsel's services in this case. The court was not required to go through the formality of a hearing to determine such an obvious proposition. Thus, we find defendant's argument to be without merit and reject it.
Accordingly, defendant's convictions and sentences are affirmed.
Affirmed.
STEIGMANN, P.J., and KNECHT, J., concur.