Docket No. 82104–Agenda 29–May 1997.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GENEALYN LOVE, Appellee.

Opinion filed October 17, 1997.

JUSTICE BILANDIC delivered the opinion of the court:

Section 113–3.1 of the Code of Criminal Procedure of 1963 allows circuit courts to order defendants who receive the services of appointed counsel to pay reimbursement for those services. 725 ILCS 5/113–3.1 (West 1994). This appeal concerns the appropriate procedures to be followed in ordering reimbursement under section 113–3.1.

FACTS

Defendant, Genealyn Love, was charged by indictment in the circuit court of Kankakee County with one count of aggravated battery with a firearm and one count of unlawful possession of a weapon by a felon. At his initial court appearance on January 19, 1995, the trial court questioned defendant about his financial resources. Defendant stated that he was unemployed and had no assets other than a 1983 Ford Escort automobile. The trial court therefore appointed the Kankakee County public defender to represent defendant. The trial court also set bail for defendant's release at $25,000. Defendant filed a motion for reduction of bail or release on a recognizance bond. At a hearing on the motion, defendant testified that he was 23 years old, living with his grandfather, and was unable to acquire any money to post a bail bond. The trial court denied defendant's motion and defendant remained in custody.

On February 6, 1995, a bail bond in the amount of $2,500 was posted to secure defendant's release from custody. The bond indicated that the money was posted by Mary Terrell. The bond contained a notice, signed by Terrell, indicating that if defendant failed to comply with the conditions of the bail bond, the money posted would be forfeited, and that even if defendant complied with the bond, the money posted may be used to pay fines, costs or restitution.

On March 7, 1995, Mary Terrell, through her attorney, filed a motion to exonerate bond in which she asked that the bond money she had posted be returned to her. Counsel representing Terrell was present in court on that date to argue the motion. Terrell's counsel stated that Terrell had “changed her mind” about posting the bond money. The trial court denied the motion.

After a bench trial, defendant was found guilty of unlawful possession of a weapon by a felon. The trial court acquitted defendant of aggravated battery with a firearm, but found him guilty of the lesser included offense of reckless conduct.

A presentence investigation of defendant was conducted. That investigation revealed that defendant was currently unemployed and that he had worked for two months at a factory in 1994 through a temporary service. As to defendant's “financial status,” the report indicated that defendant's grandparents “provide” for him and that defendant owed money for medical bills. After a brief sentencing hearing, the trial court sentenced defendant to a five-year prison term for the weapons conviction and a one-year term for the reckless conduct conviction. At the same time, the court 
sua sponte
 ordered defendant to pay $1,000 for the services of the public defender, to be withheld from the bail bond posted on defendant's behalf. The court did not hold a hearing on the issue of reimbursement.

Defendant appealed his sentences and the reimbursement order to the appellate court. The appellate court affirmed the sentence for unlawful possession of a weapon by a felon and reduced the sentence for reckless conduct from one year to 364 days. The appellate court also determined that the reimbursement order was improperly entered because the trial court did not hold a hearing regarding defendant's ability to pay such reimbursement, as mandated by statute. The appellate court therefore vacated the reimbursement order and remanded to the trial court for a hearing. No. 3–95–0937 (unpublished order under Supreme Court Rule 23). We granted the State's petition for leave to appeal. 155 Ill. 2d R. 315. We now affirm the appellate court.

 ANALYSIS

In keeping with well-settled constitutional mandates, our Code of Criminal Procedure requires that criminal defendants who cannot afford a lawyer be provided with appointed counsel. See 
Gideon v. Wainwright
, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963); 
People v. Cook
, 81 Ill. 2d 176, 179 (1980). Under section 113–3 of the Code, if the trial court determines that a defendant is indigent and desires counsel, an attorney, generally the public defender, must be appointed to represent the defendant. 725 ILCS 5/113–3(b) (West 1994). The Code also provides a mechanism under which a defendant who receives the services of appointed counsel may be required to reimburse the county or state for such services. Section 113–3.1 provides, in pertinent part, as follows:

“(a) Whenever under either Section 113–3 of this Code or Rule 607 of the Illinois Supreme Court the court appoints counsel to represent a defendant, the court may order the defendant to pay to the Clerk of the Circuit Court a reasonable sum to reimburse either the county or the State for such representation. In a hearing to determine the amount of the payment, the court shall consider the affidavit prepared by the defendant under Section 113–3 of this Code and any other information pertaining to the defendant's financial circumstances which may be submitted by the parties. Such hearing shall be conducted on the court's own motion or on motion of the State's Attorney at any time after the appointment of counsel but no later than 90 days after the entry of a final order disposing of the case at the trial level.

***

(c) The method of any payment required under this Section shall be as specified by the Court. The court may order that payments be made on a monthly basis during the term of representation; however, the sum deposited as money bond shall not be used to satisfy this court order. Any sum deposited as money bond with the Clerk of the Circuit Court under Section 110–7 of this Code may be used in the court's discretion in whole or in part to comply with any payment order entered in accordance with paragraph (a) of this Section. The court may give special consideration to the interests of relatives or other third parties who may have posted a money bond on the behalf of the defendant to secure his release. At any time prior to full payment of any payment order the court on its own motion or the motion of any party may reduce, increase, or suspend the ordered payment, or modify the method of payment, as the interest of fairness may require. No increase, suspension, or reduction may be ordered without a hearing and notice to all parties.” 725 ILCS 5/113–3.1(a), (c) (West 1994).

This appeal focuses on the procedure a trial court must follow in ordering a defendant to pay reimbursement for the services of appointed counsel. Defendant contends that section 113–3.1 requires that, prior to ordering reimbursement, the trial court must conduct a hearing into whether the defendant has the ability to pay such reimbursement. The State argues that section 113–3.1 does not require such a hearing, but that it is solely within the trial court's discretion whether to conduct a hearing into the defendant's ability to pay prior to ordering reimbursement. Alternatively, the State asserts that the posting of a cash bail bond is conclusive evidence of the defendant's ability to pay reimbursement, which obviates the need for a hearing under section 113–3.1. Finally, the State argues that defendant waived any errors in the reimbursement order by failing to object to the order in the trial court.

I

We first address the State's contention that section 113–3.1 does not require the trial court to hold a hearing into the defendant's ability to pay as a precondition to ordering reimbursement of appointed counsel's fees. According to the State, section 113–3.1 empowers trial judges to order reimbursement “at their pleasure,” without holding a hearing into the defendant's financial resources. The State asserts that section 113–3.1 merely 
allows
 the trial court, in its discretion, to conduct a hearing when the court deems it necessary to arrive at an appropriate reimbursement amount. We disagree. The State's argument ignores both the language of section 113–3.1 and prior precedent of this court.

The language of section 113–3.1(a) clearly requires the trial court to conduct a hearing into the defendant's financial resources as a precondition to ordering reimbursement. Section 113–3.1(a) begins by granting the trial court the authority to order a defendant to pay reimbursement. Subsection (a) then delineates the procedure the court must follow in order to do so:

“In a hearing to determine the amount of the payment, the court shall consider the affidavit prepared by the defendant under Section 113–3 of this Code and any other information pertaining to the defendant's financial circumstances which may be submitted by the parties. Such hearing shall be conducted on the court's own motion or on motion of the State's Attorney at any time after the appointment of counsel but no later than 90 days after the entry of a final order disposing of the case at the trial level.” 725 ILCS 5/113–3.1(a) (West 1994).

Thus, section 113–3.1(a) plainly requires that the trial court conduct, within the specified time period, a hearing into the defendant's financial resources to determine his ability to pay reimbursement. The State nonetheless insists that section 113–3.1(a) mandates only that, 
if
 the trial court holds a hearing, 
then
 the court must consider the defendant's financial circumstances. According to the State, whether to hold a hearing in the first instance is solely up to the discretion of the trial court. The State's interpretation is not logical. Under this interpretation, the statute compels the trial court to consider specific factors at a hearing, but does not compel that the hearing be conducted in the first place. According to the State, a trial court may avoid the legislature's express mandate to consider the defendant's financial circumstances by simply dispensing with a hearing. We are under a duty to interpret statutes so as to avoid absurd consequences. 
People v. Bole
, 155 Ill. 2d 188, 195 (1993). Moreover, we find nothing in the language of section 113–3.1 which supports the State's contention that a hearing into the defendant's financial circumstances is merely optional.

Any doubt that such a hearing is mandated by section 113–3.1 is quickly dispelled when the history of the reimbursement statute is reviewed. Prior to 1982, statutory authority for the recovery of appointed counsel fees from indigent defendants was contained in section 110–7(g) of the Code. Section 110–7(g) provided as follows:

“Whenever a defendant who has been admitted to bail utilizes the services of a public defender or other appointed counsel, the amount deposited may be used to reimburse the county funding the legal services.” Ill. Rev. Stat. 1979, ch. 38, par. 110–7(g).

This predecessor version did not provide for a hearing or for any consideration of the defendant's ability to pay reimbursement. It was this omission which, in part, led this court to hold section 110–7(g) unconstitutional in 
People v. Cook
, 81 Ill. 2d 176 (1980). In 
Cook
, this court found section 110–7(g) unconstitutional on two grounds. One ground was that the statute violated the due process rights of indigent defendants because it failed to provide for inquiry into the defendant's ability to pay reimbursement. 
Cook
, 81 Ill. 2d at 185. In reaching its holding, the 
Cook
 court examined the United States Supreme Court decision in 
Fuller v. Oregon
, 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116 (1974).

In 
Fuller
, the Supreme Court considered the constitutionality of an Oregon statute which, 
inter alia
, imposed an obligation on defendants who received appointed counsel to reimburse the State for the costs of that representation. The Oregon statute specifically provided that “ `[t]he court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them,' ” and imposed a duty on the trial court to consider the defendant's financial resources and the nature of the burden that payment will impose on the defendant. 
Fuller
, 417 U.S. at 43 n.5, 40 L. Ed. 2d at 649 n.5, 94 S. Ct. at 2120 n.5, quoting Or. Rev. Stat. §161.665. The defendant in 
Fuller
 argued that the statute infringed upon the constitutional right to appointed counsel because a defendant's knowledge that he may be obligated to repay the costs of representation might impel him to decline appointed counsel. The Supreme Court rejected this challenge to the Oregon statute, finding that the statute “is carefully designed to insure that only those who actually become capable of repaying the State will ever be obligated to do so. Those who remain indigent or for whom repayment would work `manifest hardship' are forever exempt from any obligation to repay.” 
Fuller
, 417 U.S. at 53, 40 L. Ed. 2d at 654, 94 S. Ct. at 2124.

In addition to 
Fuller
, the
 Cook
 court also looked at the case law of other states. The court observed that, “[o]ther courts, in considering reimbursement statutes of this kind, have similarly focused upon the presence or absence of procedural safeguards requiring judicial examination into an indigent defendant's present or future ability to reimburse as the hinge on which the question of the statute's constitutionality turns.” 
Cook
, 81 Ill. 2d at 184. The 
Cook
 court agreed that the constitutionality of a reimbursement statute depended upon its providing for inquiry into the defendant's ability to pay reimbursement. The 1978 statute's failure to provide for such an inquiry therefore rendered the statute unconstitutional. The court reasoned that “[a] summary decision which orders reimbursement without affording a hearing with opportunity to present evidence and be heard acts to violate an indigent defendant's right to procedural due process.” 
Cook
, 81 Ill. 2d at 186. The court further noted that reimbursement ordered without this procedural safeguard could restrain a defendant from exercising his right to the assistance of counsel because “if he knows that the money or other property posted for his bail will be subject to seizure to pay for legal services, regardless of his inability to pay he may choose not to exercise this constitutionally assured right.” 
Cook
, 81 Ill. 2d at 186.

This court in 
Cook
 thus established that due process requires a hearing into a defendant's ability to pay reimbursement as a precondition to ordering such reimbursement. The Illinois legislature responded to 
Cook
 in 1982 by enacting section 113–3.1, the provision at issue in this case. Section 113–3.1 was clearly intended to correct the due process violation identified in 
Cook
 by requiring that, prior to ordering reimbursement, the trial court conduct a hearing which considers the defendant's financial ability to pay reimbursement. The legislative intent to eliminate the due process violation identified in 
Cook
 is demonstrated by the following comments of one of the House sponsors of the new statute:

“Now, what we're doing is trying to rectify a problem. Two years ago I passed legislation which went up to the Supreme Court and the Supreme Court struck it down on the basis that we did not set forth proper procedures for a hearing as to when we can assess an attorneys fee against a defendant. *** This Bill is an attempt to rectify the problems in my Bill that I had two years ago.” 82d Ill. Gen. Assem., House Proceedings, May 6, 1981, at 103-04 (statements of Representative Stearney).

Accordingly, the history of the reimbursement statute leaves no doubt that, in enacting section 113–3.1, the legislature intended to require, not merely allow, the trial court to conduct a hearing into the defendant's financial circumstances prior to ordering reimbursement.

The State does not direct us to any decision interpreting section 113–3.1 in the manner it urges here. To the contrary, the decisions of our appellate court have consistently held that section 113–3.1 requires a hearing into the defendant's financial circumstances prior to ordering the defendant to pay reimbursement of public defender fees. See, 
e.g.
, 
People v. Webb
, 276 Ill. App. 3d 570, 574 (1995) (reimbursement statute requires a hearing into the defendant's financial circumstances before the court may order reimbursement); 
People v. Henderson
, 232 Ill. App. 3d 230, 239 (1992) (same); 
People v. Reynolds
, 152 Ill. App. 3d 216, 220 (1987) (section 113–3.1 satisfies due process because it requires a hearing into the defendant's financial circumstances as a precondition to ordering reimbursement). The State's contention that section 113–3.1 does not mandate a hearing into the defendant's financial circumstances is rejected.

II

The State also contends that, even if section 113–3.1 generally requires a hearing into the defendant's ability to pay, no such hearing was required in this case because the cash bail bond posted on defendant's behalf conclusively established defendant's ability to pay reimbursement, at least up to the amount of the bond. The State relies on several decisions of the Fourth District of our appellate court which held that a cash bond posted to secure a defendant's release is “definitive evidence” of his ability to pay a reimbursement order, obviating the need for any hearing into the defendant's ability to pay. 
People v. Hanna
, 288 Ill. App. 3d 109 (1997); 
People v. Nunez
, 197 Ill. App. 3d 332 (1990); 
People v. Baker
, 195 Ill. App. 3d 785 (1990). As the State acknowledges, other appellate decisions have rejected the reasoning of the Fourth District cases and held that a hearing under section 113–3.1 is required even where a cash bail bond has been posted on the defendant's behalf. See 
People v. Webb
, 276 Ill. App. 3d 570, 574-75 (3d Dist. 1995); 
People v. Henderson
, 232 Ill. App. 3d 230, 238-39 (5th Dist. 1992).

We agree with defendant that the existence of a bail bond does not allow the trial court to dispense with the hearing required by section 113–3.1(a). This conclusion is mandated by this court's decision in 
Cook
, 81 Ill. 2d 176. See 
Webb
, 276 Ill. App. 3d at 574. The statute invalidated in 
Cook
 had provided that reimbursement for appointed counsel services could be obtained only from indigent defendants who had posted bail. See Ill. Rev. Stat. 1979, ch. 38, par. 110–7(g). One ground upon which this court invalidated the statute was that, in differentiating between indigent defendants who post bail and those who do not, the statute ran afoul of the equal protection guarantee. In so holding, the 
Cook
 court specifically rejected the State's argument that a rational basis for the differentiation existed because the ability to post bail conclusively establishes the defendant's financial ability to pay for the services of appointed counsel. The court reasoned that:

“This court has never adopted any presumption (which would be, in this case, an irrebuttable one) that the posting of bail, without more, was a sufficient indicium of ability to pay wholly or partially for legal counsel. Bail may be posted with borrowed funds or by relatives or friends. ***

* * *

*** There is no rational relationship between the legislative purpose of reimbursement for the expense of appointed counsel and a statute which imposes an obligation only on one segment of this class of indigent defendants 
based upon the improper and seemingly conclusive presumption that the posting of bail demonstrates an ability to pay for those legal services.
” (Emphasis added.) 
Cook
, 81 Ill. 2d at 181-83.

The State's argument here is premised upon the precise presumption which this court rejected in 
Cook
. The State insists that the posting of a cash bond on a defendant's behalf is “conclusive evidence” of the defendant's ability to pay legal fee reimbursement, obviating the need for a hearing. See 
Baker
, 195 Ill. App. 3d at 796. In other words, the State argues that the posting of a cash bond creates an 
irrebuttable presumption
 that the defendant has the ability to pay for legal services. Accordingly, the State's position is directly contrary to this court's decision in 
Cook.

We see no reason to depart from the 
Cook
 court's rejection of a conclusive presumption of ability to pay for legal services arising from the posting of a bail bond. There is no basis in the language of section 113–3.1 for dispensing with a hearing into the defendant's financial circumstances simply because a cash bail bond has been posted. Section 113–3.1 does make reference to the possibility that money deposited as a bail bond may be available to satisfy an order of reimbursement. See 725 ILCS 5/113–3.1(c) (West 1994). The statute does not, however, provide that the hearing mandated by subsection (a) may be dispensed with where that is the case. Rather, the statute contemplates that, should the trial court determine that reimbursement is appropriate, the court may order that the reimbursement amount be paid out of the bond. 725 ILCS 5/113–3.1(c) (West 1994). Accordingly, the existence of a bail bond does not affect the need for a hearing under subsection (a), but merely provides a potential fund for satisfaction of a reimbursement order.

Further, section 113–3.1 dictates that, when considering whether to order that reimbursement be withheld from a bail bond, the trial court should consider whether the bond money was posted by a third party. Section 113–3.1(c) provides that “[t]he court may give special consideration to the interests of relatives or other third parties who may have posted a money bond on the behalf of the defendant to secure his release.” 725 ILCS 5/113–3.1(c) (West 1994). The trial court will have the opportunity to consider the interests of such third parties, however, only if the court conducts a hearing on the reimbursement issue.

Moreover, we continue to find persuasive the reasoning espoused in 
Cook
 for rejecting a conclusive presumption of ability to pay. As 
Cook
 recognized, bail money may be borrowed or may be posted by relatives or friends. 
Cook
, 81 Ill. 2d at 181. As such, the fact that bail money is posted may have no bearing on whether the 
defendant
 has the ability to pay reimbursement for the services of appointed counsel. The focus of the hearing required by section 113–3.1(a) must be on the defendant's ability to pay because reimbursement is properly ordered only where the court finds that the defendant has a reasonably foreseeable ability to pay such reimbursement. See 
Webb
, 276 Ill. App. 3d at 575; 
Henderson
, 232 Ill. App. 3d at 239; 
People v. Phillips
, 150 Ill. App. 3d 531, 534 (1986). The circumstances of this case amply illustrate the invalidity of the State's presumption. Here, the record reveals that a third party, Mary Terrell, posted the $2,500 bond to secure defendant's release on bail. In fact, counsel for Terrell appeared before the court prior to trial and attempted to secure the return of that money to Terrell. A “presumption” of ability to pay on the part of the defendant based upon the mere filing of a cash bail bond thus does not conform to the reality of this case. Additionally, where, as here, a bail bond has been posted by a third party, the fairness of requiring a hearing prior to ordering reimbursement from that bond is even more apparent.

Accordingly, we hold that section 113–3.1 requires that the trial court conduct a hearing into a defendant's financial circumstances and find an ability to pay before it may order the defendant to pay reimbursement for appointed counsel. Such a hearing is required even where a cash bail bond has been posted on the defendant's behalf. The hearing must focus on the foreseeable ability of the defendant to pay reimbursement as well as the costs of the representation provided. See 725 ILCS 5/113–3.1(a) (West 1994); 
Webb
, 276 Ill. App. 3d at 574-75; 
Henderson
, 232 Ill. App. 3d at 239; 
People v. Terry
, 170 Ill. App. 3d 484, 488-89 (1988). Further, if a bail bond has been posted, the court should consider whether a third party provided the money for that bond. See 725 ILCS 5/113–3.1(c) (West 1994); 
Webb
, 276 Ill. App. 3d at 573;
 People v. Reynolds
, 152 Ill. App. 3d 216, 220 (1987). The trial court may, in its discretion, decide to give special consideration to the interests of such third party. 
Henderson
, 232 Ill. App. 3d at 239; 
People v. Gutierrez
, 156 Ill. App. 3d 555, 559 (1987). To the extent the decisions in 
People v. Hanna
, 288 Ill. App. 3d 109 (1997), 
People v. Nunez
, 197 Ill. App. 3d 332 (1990), and 
People v. Baker
, 195 Ill. App. 3d 785 (1990), are inconsistent with this opinion, they are hereby overruled.

III

Finally, the State contends that defendant waived any error in the reimbursement order by failing to object to the order in the trial court. Defendant responds that the trial court's error in failing to conform to section 113–3.1 should be considered plain error. In the alternative, defendant contends that his trial counsel's failure to object constituted ineffective assistance of counsel.

We find that application of the waiver rule is inappropriate under the circumstances of this case. Where, as here, the trial court wholly ignored the statutory procedures mandated for a reimbursement order under section 113–3.1, and instead ordered reimbursement 
sua sponte
 without any warning to the defendant, fairness dictates that waiver should not be applied. The hearing required by section 113–3.1 is a safeguard designed to insure that a reimbursement order entered under that section meets constitutional standards, as identified by this court in 
Cook
. Here, the trial court failed to conduct any hearing or to otherwise engage in any consideration of defendant's financial circumstances and failed to allow defendant any opportunity to present evidence or otherwise contest the imposition of a reimbursement order. Rather, the record reveals that the trial court proceeded as if the imposition of a reimbursement order was a perfunctory exercise, performed as a rule in every case. As discussed at length earlier in this opinion, however, reimbursement under section 113–3.1 is not simply a mechanism to be routinely employed in every case. Constitutional principles require that reimbursement be ordered only when certain conditions are satisfied. The trial court's failure to adhere to the procedural safeguards mandated by section 113–3.1 requires vacatur of the reimbursement order, despite defendant's failure to object.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court vacating the reimbursement order and remanding for a hearing pursuant to section 113–3.1.

Appellate court judgment affirmed
.