THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
THOMAS WESLEY HOYT, Defendant-Appellant.
Fourth District   No. 4—88—0581

Opinion filed March 30, 1989.—Rehearing denied April 25, 1989.

Gary F. Geisler and Jeffrey S. Geisler, both of Geisler, Waks & Geisler, of Decatur, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and James Overholt, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

This case comes to us on appeal from the defendant's conviction for armed violence in the circuit court of Macon County. Defendant argues the court improperly refused to give jury instructions on the defenses of compulsion and use of force in defense of a dwelling. We disagree and affirm the circuit court.

On April 14, 1988, the defendant was charged by information with the offenses of attempt (first degree murder), two counts of armed violence, and unlawful possession of *Cannabis sativa* plants. (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4(c)(1), 33A—2; Ill. Rev. Stat. 1987, ch. 56½, par. 708(c).) The defendant entered a not guilty plea to all counts.

On June 22, 1988, the defendant's jury trial began. The State and the defendant stipulated the plants confiscated from the defendant's home were *Cannabis sativa* plants. The State presented the testimony of police officers as to the events on the night of April 12, 1988.

On that night, defendant, his girlfriend Terri Collins, and her daughter were at their home. The daughter was in her upstairs bedroom, the defendant and Collins were in their first-floor bedroom at the back of the house. Collins was asleep and the defendant was lying in bed watching television. The entire house was dark except for the light from the television screen in the bedroom. The defendant had a loaded handgun in its case on the headboard of the bed.

After obtaining a search warrant, five officers of the Decatur police department arrived at defendant's house at about 11:15 p.m. Following a prearranged plan, three of the officers went to the front door and two secured the rear door. The officers at the front door knocked and announced they were police officers and had a search warrant. Receiving no response, the police broke down the outer door. At a second inner door the police once again knocked and announced they were the police and had a search warrant. Again receiving no response, they broke in the second door. They proceeded to the rear of the residence until one of the officers approached the doorway to the defendant's bedroom. At that point, the officer shined his flashlight into the bedroom and the defendant fired his pistol. The officer re-

treated and ordered the defendant to come out of the bedroom. The defendant came out of the bedroom, placed his pistol on the kitchen counter, and was taken into custody.

In the defense case, defendant's mother testified he had a serious hearing loss from the time of his early childhood. Dr. Joseph Velek, who had tested the defendant's hearing on two separate occasions, also testified. The doctor's testimony showed the defendant had a moderately severe hearing loss in both ears resulting in a 43% hearing disability.

The defendant testified in his own behalf. He stated on the evening of April 12, 1988, he was lying in his bedroom watching TV. He noticed two figures walking along the outside of his house and thought they were prowlers. He took his loaded pistol from the headboard of the bed and looked out through a small opening in the window curtains. He could see two figures directly outside his bedroom window, one of them with a gun in his hand. Defendant heard the sound of his front door being broken in. He testified he heard voices but could not make out what they were saying.

Defendant then saw a flashlight being shined into his bedroom. He testified he could not see the person who held the light and did not know it was a police officer. He stated as soon as he saw the flashlight his gun went off. The flashlight then disappeared and he heard voices from the front of the house. It was only at this point that Terri Collins told him it was the police who had entered the house.

At the close of evidence a jury instruction conference took place. The defendant offered instructions on use of force in defense of a dwelling and compulsion. (Illinois Pattern Jury Instructions, Criminal, Nos. 24—25.07, 24—25.21 (2d ed. 1981) (IPI Criminal 2d).) The State did not object to the defendant's instruction as to use of force in regard to the attempt (murder) count, but did object as to its use in regard to the armed violence counts. The State objected to the compulsion instruction as to all three counts. The trial court upheld the State's objections and permitted the use of the force in defense of a dwelling instruction only as to the attempt (murder) count.

On June 27, 1988, the jury returned a verdict of not guilty on count I of attempt (first degree murder), but found the defendant guilty of count II, armed violence (pistol); count III, armed violence (rifle); and count IV, unlawful possession of cannabis.

On August 1, 1988, the trial court vacated the convictions as to counts III and IV subsequent to defendant's post-trial motions. On that same day, the defendant was sentenced to six years in the Illinois

Department of Corrections and filed a notice of appeal.

On appeal, the single remaining conviction is armed violence with a pistol. (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2.) Defendant argues it was the prerogative of the jury to determine whether he was armed under the statute and he was entitled to a use of force in defense of a dwelling instruction under the facts of this case. Defendant contends he armed himself only in response to the invasion of his home by the police. Because of the defendant's hearing impairment, he was unaware the invaders were the police until after he had armed himself and fired a shot.

■ The trial court did in fact permit the jury to be instructed on use of force in defense of a dwelling, but limited it to the count of attempt (murder). A defendant is entitled to appropriate jury instructions which present his theory of the case to the jury when and if such theories are supported by the evidence. (*People v. Carreon* (1987), 162 Ill. App. 3d 990, 516 N.E.2d 372, *appeal denied* (1988), 118 Ill. 2d 547, 520 N.E.2d 388.) A defendant may be entitled to an instruction even though it conflicts with his theory of the case. (*People v. Creamer* (1986), 143 Ill. App. 3d 64, 492 N.E.2d 923.) However, the right of a defendant to instructions is not unlimited. Instructions which inject unnecessary issues into deliberations of juries are properly refused in criminal proceedings. (*People v. Baes* (1981), 94 Ill. App. 3d 741, 419 N.E.2d 47.) The function of jury instructions is to convey to the jury the correct principles of law applicable to evidence submitted so the jury may, by application of proper legal principles, arrive at the correct conclusion according to the law and the evidence. *People v. Morgan* (1987), 152 Ill. App. 3d 97, 504 N.E.2d 172, *appeal denied* (1987), 115 Ill. 2d 547, 511 N.E.2d 434, *cert. denied* (1987), 481 U.S. 1025, 98 L. Ed. 2d 141, 108 S. Ct. 189.

■ The defendant here stands convicted of armed violence. Under Illinois law a person commits armed violence when he commits any felony "while armed with a dangerous weapon." (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2.) The definition of "armed" provided by statute is "when he carries on or about his person or is otherwise armed." (Ill. Rev. Stat. 1985, ch. 38, par. 33A—1(a).) Although the statute does not require the use or even the threatened use of the weapon, it does require the person carry the weapon on or about his person or be otherwise armed. This requirement emphasizes the quality of the relationship between the person and the weapon or the potential hazard which exists when a person is armed while committing a felony. *People v. King* (1987), 155 Ill. App. 3d 363, 507 N.E.2d 1285, *appeal denied* (1987), 116 Ill. 2d 569, 515 N.E.2d 119.

■ The defendant's tendered jury instruction deals with the use of force. IPI Criminal 2d No. 24—25.07 provides in part:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to terminate another's unlawful attack upon a dwelling." (IPI Criminal 2d No. 24—25.07 (1981).)

This instruction deals only with the use of force. The crime of which the defendant stands convicted, armed violence, consists of two elements. "Armed violence—Elements of the offense. A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law." (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2.) The commission of the predicate felony, possession of *Cannabis sativa*, is not contested by defendant and is a possessory crime not involving the use of force as an element. Defendant argues justifiable use of force in defense of a dwelling should be a defense to the second element of armed violence, armed with a dangerous weapon. As *King* makes clear, the defendant need not use or threaten to use the weapon to be guilty of armed violence. The jury instruction given on armed violence did not state the use of force or violence was an element of the crime. (See IPI Criminal 2d No. 11.19 (1981).) The State here need only have shown the defendant was armed. The use of force was irrelevant.

In *People v. Lenoir* (1984), 125 Ill. App. 3d 260, 465 N.E.2d 1027, this court considered a similar fact situation. There the defendant was found in bed at the time of his arrest. Near him on the bed were illegal drugs and a revolver. This court held the presence of the gun in those circumstances was sufficient to sustain the conviction for armed violence. As in *Lenoir*, a number of hypotheticals have been suggested here to suggest the application of the armed violence statute to cases such as this leads to absurd results. We reiterate from *Lenoir*, the results are severe, not absurd. This is the intent of the statute.

The defendant argues *People v. Wells* (1982), 110 Ill. App. 3d 700, 442 N.E.2d 1341, stands for the proposition that justifiable use of force is a defense to armed violence. However, the issue in *Wells* was the failure of the trial court to instruct the jury the State carried the burden of proof in showing the defendant's actions were unjustified where the predicate offense was involuntary manslaughter. The court, in *Wells*, was particularly concerned about this oversight where proper instruction was given in a related murder count.

■ While a defendant is entitled to a jury instruction on a legally recognized defense based on even very slight evidence, it would be ab-

surd to argue he is free to advance any defense whether it is related to the crime charged or not. In this case, the defense which the defendant seeks to interpose does not go to any of the elements of the crime charged. Defendant's instruction goes to the issue of the use of force, whereas the crimes charged do not require force as an element. For this reason, the trial court acted appropriately in refusing the defendant's proffered instruction as to justifiable use of force.

■ The defendant also complains of the trial court's refusal to give the defendant's instruction on compulsion on the counts of attempt (murder) and armed violence. The defense of compulsion generally requires an impending imminent threat of great bodily harm together with a demand that the person perform a specific criminal act for which he is eventually charged. (*People v. Unger* (1977), 66 Ill. 2d 333, 362 N.E.2d 319.) While the terms are sometimes used interchangeably, compulsion and necessity are theoretically distinct defenses. "Compulsion" implies complete deprivation of free will, *i.e.,* an absence of choice, whereas "necessity" involves choice between two or more admitted evils. *People v. Bivens* (1987), 156 Ill. App. 3d 222, 509 N.E.2d 640.

■ A defendant is entitled to have the jury instructed on any legally recognized defense which has some foundation in the evidence. (*People v. Graves* (1985), 133 Ill. App. 3d 546, 479 N.E.2d 10.) In this case, the defendant failed to introduce the requisite minimal evidence to show the defense of compulsion is available to him. There was no demand made on the defendant by a third party to commit a crime as required by the supreme court's definition in *Unger*. Likewise, there is no evidence the defendant was completely deprived of free will. While the language of the IPI instruction may have suggested a compulsion defense was available, the definition of compulsion clearly shows it is not available here. There was no outside force or person which compelled the defendant to act in the manner in which he did. Nor were the circumstances such that the defendant was deprived of free will. The trial court acted properly in refusing the defendant's compulsion instructions.

■ Finally, the defendant contends by refusing to give the use of force in defense of a dwelling instruction in this case the State has deprived him of his right to defend himself because of his commission of a felony. The court's refusal to give this instruction in no way abrogates the defendant's rights. The decision of the court to refuse the instruction was based on the irrelevance of the proffered instruction to the elements of the crime charged. The defendant here was not denied his right of self-defense where the trial court permitted the in-

struction on justifiable use of force in regard to the attempt (murder) charge. The court was correct in doing so because force was an issue there and an element of the crime charged. The court in no way abrogated the defenses available to the defendant or the defendant's rights by its refusal to give the instruction. Its refusal only reflected the lack of a nexus between the defense which defendant sought instruction on and the particular crime charged.

Affirmed.

LUND and GREEN, JJ., concur.