THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD LAMAR WASHINGTON, Defendant-Appellant.

Fourth District    No. 4—96—0813

Opinion filed July 22, 1998.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Donald Lamar Washington was convicted of residential burglary (720 ILCS 5/19—3 (West 1996)) after a jury trial in the circuit court of Champaign County. At the time the offense was committed, defendant was serving a sentence of mandatory supervised release for an unlawful use of weapons by a felon conviction (weapons offense). The trial court sentenced defendant to 15 years' imprisonment, to be served consecutively to the sentence for the weapons offense. Defendant appeals, arguing (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the trial court ordered reimbursement for appointed counsel's fees prior to any representation and without a hearing; and (3) the trial court sentenced defendant under the mistaken belief the residential burglary sentence must be served consecutively to the prior sentence. We affirm in part as modified and vacate the recoupment order and remand for a reimbursement hearing.

## I. BACKGROUND

In case No. 94—CF—811, defendant was convicted of the weapons offense and sentenced to four years' imprisonment. On February 9, 1996, defendant was released from prison and began serving a one-year term of mandatory supervised release. In March 1996, defendant was charged with residential burglary.

At trial, Rochella Cooper testified she locked her tri-level house as she left at approximately 5 p.m. on March 23, 1996. As she drove away, she passed a man wearing a black ski mask and a black jacket with red and white lettering. The man waved at her. Cooper returned home at approximately 5:30 p.m. She placed a key into the lock, but the door opened easily without the key. Cooper entered her house, walked past the stairway, and noticed her bedroom light was on. She turned off that light and a person then ran across her bedroom. Cooper asked him to identify himself. The intruder responded, "I'm in your house. Someone broke in. I'm looking for them [sic]."

The man was at the top of the stairs, she was at the bottom. Defendant walked toward the stairs and Cooper "[got] a good look" at defendant's face. Defendant then ran down the stairs. Cooper ran out the front door, which was about four feet from where she had been standing. Defendant exited the back door and jumped over Cooper's fence. As he left, defendant dropped Cooper's portable telephone, which she had left on her night stand.

Cooper described the intruder as African-American, wearing black jeans and a black jacket, the same clothes she saw on the man who waved at her. The intruder was approximately 6 feet tall, was thin, and had a dark complexion. Cooper identified defendant as the intruder. She did not doubt her identification of him. Defendant was not wearing the ski mask when she saw him in the house.

After Cooper called the police, she surveyed her home. The dresser drawers in her bedroom were empty, and the drawers were on her dresser. Nothing was missing from them. The rear panel of the cabinet for her videocassette recorder (VCR) had been removed. The VCR was found on a couch one floor above the room where the VCR had been. A remote control that had been next to the VCR was missing.

Cooper owned the VCR for three years. Her husband purchased it and brought it home. She was present when he opened the new box and set up the VCR. The VCR had not been loaned to anyone or been taken to be repaired.

A police officer asked Cooper to examine photographs. She did not identify anyone in those photographs. She stated an individual looked similar, but he had a wider nose than the individual in her house and his face was thinner. Defendant's picture was not in the photograph display.

On cross-examination, Cooper testified she did not view a lineup or hear a voice lineup. She did not recall if the intruder wore gloves. A light was on when Cooper entered her house. The sun was not out, but "it was light outside." Cooper saw defendant probably less than one minute. Cooper knew the State would have someone it believed to be the intruder at trial. She did not know if the VCR was a display model.

On redirect examination, Cooper said she identified defendant because he was the person she observed in her house, not because he was the only African-American male in the courtroom.

James B. Clark, a police officer for Champaign, testified he interviewed Cooper at her residence. Officer Clark observed the front door had been forced open. He searched the entertainment center, the VCR, and the cellular phone for fingerprints. Officer Clark found latent fingerprints on the VCR and on a glass door to the entertainment center.

John Bunting, a forensic scientist with the Illinois State Police Crime Lab, testified the latent fingerprint found on the bottom of the VCR was made by defendant. On cross-examination, Bunting testified there was no way of determining the age of the fingerprint.

Donald Shelton, an investigator for the Champaign police department, testified he contacted Cooper after he received the information on the fingerprints from the Illinois State Police Crime Lab. Investigator Shelton informed Cooper the person identified by the fingerprint analysis was in custody. Based on this evidence, a jury found defendant guilty.

## II. REASONABLE DOUBT

Defendant argues he was not proved guilty beyond a reasonable doubt for two reasons. First, defendant maintains Cooper's identification of him was neither positive nor credible, and a conviction based on her unreliable identification cannot be sustained. Second, defendant contends his fingerprints were not alone sufficient to support a guilty verdict.

■ Absent a determination the evidence is so improbable or unsatisfactory it creates reasonable doubt as to defendant's guilt, this court will not overturn a criminal conviction. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985). When considering a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and will affirm the trial court's decision if any rational fact finder could have found the necessary elements of the offense beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277. The offense of residential burglary is committed when one "knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." 720 ILCS 5/19—3(a) (West 1996).

■ Defendant contends we should overrule the conviction because Cooper's testimony was unreliable (see *People v. Dowaliby*, 221 Ill. App. 3d 788, 800, 582 N.E.2d 1243, 1250-51 (1991)) or because the fingerprints were not in "the immediate vicinity of the crime under such circumstances as to establish beyond a reasonable doubt that the fingerprints were impressed at the time" of the crime (see *People v. Rhodes*, 85 Ill. 2d 241, 249, 422 N.E.2d 605, 608 (1981)). These cases do not mandate a contrary result. In *Dowaliby*, the witness' identification was vague. The witness did not identify the defendant in court and was unable to provide a general description, including defendant's age and race. *Dowaliby*, 221 Ill. App. 3d at 800, 582 N.E.2d at 1250-51. Here Cooper provided a description of the intruder and identified defendant in court.

Defendant's reliance on *Rhodes* is also misplaced. Defendant cites *Rhodes* as the standard when a conviction is based on fingerprints alone. Here, there is not only a fingerprint of defendant on a VCR that had been moved during the burglary, but also an identification of defendant. Given Cooper's testimony and defendant's fingerprint at the scene, we find a rational jury could have found beyond a reasonable doubt defendant entered Cooper's home without permission and with the intent to commit a theft therein.

## III. RECOUPMENT ORDER

Defendant next argues the recoupment order should be vacated because the trial court failed to hold the statutorily mandated hearing and because the order was entered before any services were rendered by counsel. The State maintains defendant waived this argument because the record does not contain relevant transcripts and because defendant failed to raise the issue in the trial court.

■ In *People v. Love*, 177 Ill. 2d 550, 560, 687 N.E.2d 32, 38 (1997), the Supreme Court of Illinois held section 113—3.1 of the Code of Criminal Procedure of 1963 requires a trial court to hold a hearing on the defendant's financial resources before ordering reimbursement of attorney fees. See 725 ILCS 5/113—3.1 (West 1996).

The record in this case does not demonstrate the trial court held a hearing in compliance with *Love* and section 113—3.1. The record includes defendant's affidavit for court-appointed counsel, an order for payment with the amount inserted and a preprinted statement "[t]he payment(s) are based on your present financial circumstances," an arraignment checklist with a preprinted line indicating the reimbursement amount ordered "($300/$150)," and a brief docket entry reflecting defendant's arraignment. The affidavit, the recoupment order, and the docket entry are dated April 5, 1996. The portion of the docket entry relating to reimbursement follows:

> "[Defendant] arraigned. Motion by [defendant] for court-appointed counsel. Motion is allowed. *** Attorney, [public defender] is appointed to represent [defendant]. Cause is continued for appearance of counsel to 4-11-96 at 1:30 p.m. in J.
> *** Bond set at $10,000. Payment Order For Court-Appointed Attorney entered. SEE ORDER. H. Welch appears on bond only."

The record suggests the order of reimbursement was nothing more than a perfunctory exercise by the court. Because the scant record fails to reveal a hearing in accordance with *Love*, the order is vacated. See *People v. Atwood*, 193 Ill. App. 3d 580, 592, 549 N.E.2d 1362, 1369 (1990) ("a burden is placed upon the court and the prosecutor to see that a proper record is made to support the reimbursement order"); *People v. Terry*, 170 Ill. App. 3d 484, 489, 524 N.E.2d 685, 689 (1988)

("[i]t is essential the trial court create a complete record"); see also *People v. Nash*, 183 Ill. App. 3d 924, 933, 539 N.E.2d 822, 827 (1989).

The State's waiver argument, based on defendant's failure to raise the issue in the trial court, fails. We find the circumstances similar to those in *Love*, in which the court found the issue regarding the absence of a reimbursement hearing was not waived where the trial court "wholly ignored the statutory procedures mandated" by section 113—3.1. *Love*, 177 Ill. 2d at 564, 687 N.E.2d at 39.

Because we vacate the trial court's order for reimbursement and remand for proceedings consistent with *Love*, we need not address defendant's arguments regarding the timeliness of the recoupment order.

## IV. SENTENCING

Defendant maintains the trial court erred in sentencing defendant to a term of imprisonment consecutive to the time remaining in No. 94—CF—811. Defendant contends the trial court mistakenly believed the consecutive sentence was mandated by section 5—8—4(f) of the Unified Code of Corrections (730 ILCS 5/5—8—4(f) (West 1996)). Defendant cites *People v. Hausman*, 287 Ill. App. 3d 1069, 1071-72, 679 N.E.2d 867, 869 (1997), and argues the plain error exception to the waiver rule should apply. The State maintains defendant waived this argument by not only failing to raise the issue in a posttrial motion, but also agreeing the consecutive sentence was mandatory.

The following discussion occurred at the sentencing hearing:

"THE COURT: *** [T]he sentence imposed in this case must be served consecutively to any unexpired portion of the sentence remaining in [No.] 94—CF—[8]11. Wouldn't that be a mandatory consecutive?

***

DEFENSE COUNSEL: Judge, I agree with the Court's assessment ***.

THE COURT: *** Well, let me make this express for the record, too, in case it should come up later.

I would not be imposing a consecutive sentence. I would not make this necessary statutory finding that, in my estimation, it's necessary for the protection of the public that the 15-year sentence agreed to and to be imposed upon [defendant] in this case must be served consecutively to any unexpired portion of the sentence in [No.] 94—CF—[8]11.

I believe that the 15 years is a fair and reasonable sentence and is adequate.

Notwithstanding that, I believe that under the provisions of [s]ection 5—8—4, [s]ubsection F, because [defendant] was technically

committed to the [DOC] at the time of this offense, he must serve any sentence imposed herein consecutively to the unexpired portion of the sentence in [No.] 94—CF—[8]11.

\*\*\*

In the event I'm in error and the [DOC] feels he can serve this concurrently, that would be fine."

The trial court sentenced defendant to a consecutive term based upon its interpretation of section 5—8—4(f). See 730 ILCS 5/5—8—4(f) (West 1996). In *People ex rel. Gibson v. Cannon*, 65 Ill. 2d 366, 370-71, 357 N.E.2d 1180, 1182 (1976), the Supreme Court of Illinois held section 5—8—4(f) did not apply to individuals on parole because parolees were not "held" by the DOC. Consecutive sentences are not mandated in these circumstances. Defendant's sentence resulted from the trial court's misinterpretation of the law.

The State maintains regardless of the trial court's misinterpretation, defendant waived the error. See *People v. Burt*, 168 Ill. 2d 49, 69, 658 N.E.2d 375, 385 (1995) (noting when a defendant fails to object at the sentencing hearing or raise the issue in his motion to reconsider, the issue is waived on appeal). The State relies on *People v. Moore*, 289 Ill. App. 3d 357, 363, 681 N.E.2d 1089, 1093 (1997), and *People v. Gwartney*, 289 Ill. App. 3d 350, 356-57, 683 N.E.2d 497, 501 (1997), in which this court held the miscalculation of sentence credit was waived on appeal when defense counsel explicitly agreed to an incorrect calculation.

Recent supreme court supervisory orders, however, vacated our decisions in both *Moore* and *Gwartney* in relevant part and remanded for the provision of sentence credit. *People v. Moore*, 175 Ill. 2d 545, 688 N.E.2d 308 (1997) (nonprecedential supreme court supervisory order); *People v. Gwartney*, 175 Ill. 2d 539, 688 N.E.2d 308 (1997) (nonprecedential supreme court supervisory order). We find the mere fact a defendant affirmatively agrees with the trial court on an issue such as the one before us does not render an issue unreviewable.

■ This court may address an otherwise waived issue under the plain error exception to the waiver rule in the following circumstances: (1) when the evidence is closely balanced or (2) when an error is so fundamental a defendant may have been deprived of a fair sentencing hearing. *People v. Beals*, 162 Ill. 2d 497, 511, 643 N.E.2d 789, 796 (1994). The trial court's erroneous interpretation of the law caused defendant to receive a consecutive sentence rather than a concurrent one. The restraint on his liberty was thus greater than that required by law. This increased restraint falls within the second prong of the plain error rule.

Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) gives

authority to courts of review to make necessary modifications to trial court orders. This court may invoke Rule 615(b)(4) to modify an order when a trial court imposes an unlawful sentence. *People v. Jones*, 168 Ill. 2d 367, 377-78, 659 N.E.2d 1306, 1310 (1995). The trial court expressed it would not have imposed a consecutive sentence absent its belief one was mandated and it would agree with a concurrent term if its interpretation of section 5—8—4(f) was wrong. We invoke our authority under Rule 615(b)(4) to modify defendant's sentence to a 15-year imprisonment sentence to be served *concurrently* with any sentence imposed in case No. 94—CF—811.

## V. CONCLUSION

For the foregoing reasons, we affirm defendant's conviction, vacate the order of recoupment and remand for proceedings pursuant to *Love*, and modify defendant's sentence.

Affirmed in part as modified, vacated in part and remanded with directions.

COOK and STEIGMANN, JJ., concur.