NO. 4-01-1023

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

DEBRA L. ROBERSON,

Defendant-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Champaign County

No. 01TR11249

Honorable

Holly F. Clemons,

Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a jury trial in the circuit court of Champaign County, defendant Debra L. Roberson was found guilty of leaving the scene of an accident.  625 ILCS 5/11-402(a) (West 2000).  The trial court sentenced defendant to 12 months' conditional discharge and directed her to perform 150 hours' community service and to pay $350 within 10 months for the services of court-appointed counsel.  The issues on appeal are whether (1) defendant's trial counsel provided ineffective assistance by failing to present a defense of compulsion rather than a defense of necessity, (2) the trial court erred by not allowing defendant to testify concerning her state of mind at the time of the accident, and (3) the trial court failed to conduct a meaningful hearing regarding defendant's ability to pay for the services of court-appointed counsel.  We vacate the order directing defendant to pay $350 for the services of court-appointed counsel, remand for a hearing on defendant's ability to pay for such services, and affirm in all other respects.

The accident occurred on April 29, 2001, at or near the intersection of Williamsburg and Summit Ridge in Champaign, Illinois.  Defendant was driving her Chevrolet Malibu.  The operator of the other vehicle, a 1989 Chevrolet Blazer, was Terrence Avant.  It is undisputed that defendant did not stop; remain at the scene; and give her name, address, registration number, driver's license number, and identity of the owner of the vehicle.  Champaign police officer Colby Oleson testified that he observed a dented fender on the Blazer.  As he was talking to Avant, Avant pointed out defendant's vehicle to Oleson, and he eventually apprehended her.

Defendant's friend, Charika Williams, was a passenger in Avant's vehicle.  Avant was Williams's boyfriend.  Prior to the collision, there had been an altercation between Avant and defendant after defendant tried to stop Avant's vehicle to speak with Williams and began striking the passenger side window of Avant's vehicle.  The severity of the altercation was disputed by defendant, Avant, and Williams.  Williams and Avant characterized it as a little wrestling or tussling, while defendant testified that Avant hit and kicked her.  When Avant drove away with Williams in the Blazer, defendant followed in her vehicle.  In an attempt to try to lose defendant, Avant made a quick U-turn.  After this maneuver, the vehicles collided.

Williams testified that there was a small dent in the Blazer and that defendant's car was more extensively damaged.  Avant testified that, after the collision, defendant did not stop.  Avant followed her for a while and then found a police officer and reported what happened.  While he was talking to the officer, defendant drove by in her car.

Defendant testified that she was upset with Williams when she saw Williams in Avant's truck.  She wanted to talk to Williams, and she tapped on the window of the vehicle and yelled at Williams to get out of the truck.  According to defendant, Avant threw the truck into park, jumped out, grabbed her, threw her to the ground, and proceeded to hit and kick her.  She was swinging and kicking to get him off her.  After Avant drove away, she followed because she was upset and wanted to talk to Williams.  Avant made a U-turn, and she turned right behind him.  That was when the collision occurred.  She did not stop after the collision because she was afraid that Avant was going to hit her, and she decided to find them later and give Williams the information that they needed.  When she drove away, Avant chased her for 5 or 10 minutes.  She was proceeding to Avant's mother's house when she was stopped by the police.  She thought Avant would not hurt her at his mother's house and after having time to cool off.  

To prevail on a claim of ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness and it is reasonably probable that, but for counsel's unprofessional performance, the result of the proceedings would have been different.  
People v.
 
Reid
, 179 Ill. 2d 297, 310, 688 N.E.2d 1156, 1162 (1997).  On appeal, defendant argues that defense trial counsel should have presented a defense of compulsion rather than one of necessity.  The defenses of compulsion and necessity are defined by statute.  720 ILCS 5/7-11(a), 7-13 (West 2000).  Both are affirmative defenses.  720 ILCS 5/7-14 (West 2000).  Unless the State's evidence raises the issue, the defendant must present some evidence on the defense to raise the issue.  720 ILCS 5/3-2(a) (West 2000).  A defendant is entitled to have a jury instructed on a legally recognized defense that has some foundation in evidence.  
People v. Hoyt
, 180 Ill. App. 3d 863, 869, 536 N.E.2d 472, 476 (1989).

Compulsion is a defense distinct from necessity.  Compulsion implies complete deprivation of free will and the absence of choice; necessity involves choice between two or more admitted evils.  
Hoyt
, 180 Ill. App. 3d at 869, 536 N.E.2d at 476.  Under the necessity defense, conduct that would otherwise be an offense is justified if the defendant was (1) without blame in occasioning or developing the situation and (2) reasonably believed the conduct was necessary to avoid a public or private injury greater than the injury that might reasonably result from her own conduct.  720 ILCS 5/7-13 (West 2000).  By contrast, the defense of compulsion provides that, except for an offense punishable with death, a person is not guilty of an offense if (1) she performs the conduct under the compulsion of threat or imminent infliction of death or great bodily harm and (2) she reasonably believed death or great bodily harm would be inflicted on her if she did not perform such conduct.  720 ILCS 5/7-11(a) (West 2000).  "The defense of compulsion generally requires an impending imminent threat of great bodily harm together with a demand that the person perform a specific criminal act for which he is eventually charged."  
Hoyt
, 180 Ill. App. 3d at 869, 536 N.E.2d at 476, citing 
People v. Unger
, 66 Ill. 2d 333, 339, 362 N.E.2d 319, 322 (1977).  

There was no evidence in this case that Avant, or anyone else, threatened defendant with imminent infliction of death or great bodily harm unless she left the scene of the accident.  By comparison, in 
People v. Clinkscales
, 19 Ill. App. 3d 173, 175, 311 N.E.2d 253, 255 (1974), relied on by defendant, the reviewing court found the evidence warranted the giving of an instruction on compulsion in a trial involving a charge of resisting a police officer where a police officer came out of bushes; grabbed the defendant; said, "I got you, nigger"; and struck the defendant in the head with a police club.  In this case, although defendant testified she was concerned that Avant would be threatening or cause her harm if she stopped, that behavior by Avant never occurred.  Defendant was not compelled to leave the scene of the accident.  In addition, the evidence shows defendant followed Avant and the collision occurred because of defendant's conduct.  Defense trial counsel was not ineffective for failing to raise the defense of compulsion.  It was not available under the facts of this case.

Defendant next contends that it was plain error for the trial court to prevent her from testifying about her state of mind.  A review of the transcript shows that, even though the trial court sustained objections to questions that were leading or called for speculation, defendant was allowed to testify about her state of mind.

Without objection, defendant testified that, when her car hit Avant's vehicle, the only thing she "could think of was he's going to hurt me."  She testified that she was afraid when she hit the truck.  She testified, "I was very, very, very upset and scared and just wanted to get away from--from him because I was afraid he was going to hurt me."  She then testified that she drove away because she was afraid he was going to hurt her and she wanted to find them later or find Williams later to give her the information that she needed.  She testified that, when the police stopped her, she was going to the home of Avant's mother. 

The record shows the trial court ruled that defendant was not allowed to speculate that Avant would do more than throw her to the ground for hitting his truck; to respond to a leading question that she was afraid "because he knocked you down, right?"; and to speculate that she would have stopped had the earlier altercation not occurred. In this appeal, defendant does not challenge each of these evidentiary rulings as being an abuse of discretion.  Instead, defendant makes the argument that she was denied a fair trial because the trial court did not allow her to "fully testify as to her mental state at the time of the accident."  We disagree.  Defendant was allowed to fully disclose to the jury her mental state at the time of the accident through responses to appropriate questions by her attorney.  There was evidence of the earlier altercation between Avant and defendant and that, at the time of the accident, defendant was afraid of what Avant might do.  Defense counsel was free to argue, and did argue, the inferences to the jury.  Defense counsel argued that defendant was "scared of a bully"; defendant was beaten, knocked down, and kicked; and defendant was motivated by fear.  Defendant was allowed to fully explore the question of her mental state at the time of the accident.

At the conclusion of the sentencing hearing, the trial court inquired of defendant whether she was working and how much she was earning.  With respect to the hearing on payment for court-appointed counsel, the record shows:

"THE COURT: *** Ms. Roberson, where are you working?

MS. ROBERSON: I'm working at the (inaudible).

THE COURT: How much are you earning per month there?

MS. ROBERSON: $500 a month.

THE COURT: (Inaudible.)  I will order Ms. Roberson to pay for the services of court-appointed counsel the amount of $350 within the next 10 months."

Defendant's financial affidavit showed an income of $650 per month, an employment of one month, one child, and enrollment as a student at Heartland Community College.

Section 113-3.1(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-3.1(a) (West 2000)) requires a trial court to conduct a hearing regarding the defendant's financial resources to determine her ability to pay for court-appointed counsel.  
People v. Love
, 177 Ill. 2d 550, 556, 687 N.E.2d 32, 35 (1997).  The hearing must focus on the defendant's foreseeable ability to pay.  
Love
, 177 Ill. 2d at 563, 687 N.E.2d at 38.  At the hearing, the trial court is to consider the affidavit prepared by defendant in seeking court-appointed counsel.  725 ILCS 5/113-3.1(a) (West 2000).  In addition, the defendant must (1) have notice that the trial court is considering imposing a payment order pursuant to section 113-3.1 of the Code and (2) be given the opportunity to present evidence regarding her ability to pay and other relevant circumstances and otherwise be heard regarding whether the court should impose such an order.  
People v. Johnson
, 297 Ill. App. 3d 163, 164-65, 696 N.E.2d 1269, 1270 (1998).  The trial court may not simply order reimbursement in a perfunctory manner.  See 
People v. Washington
, 297 Ill. App. 3d 790, 794-95, 697 N.E.2d 1241, 1244-45 (1998). 

In 
Johnson
, this court recommended a procedure to be employed by the trial court to provide a defendant notice of the fact that the issue of reimbursement of attorney fees was about to be considered by the trial court.  
Johnson
, 297 Ill. App. 3d at 165, 696 N.E.2d at 1270.  The record in this case does not show that the procedure recommended in 
Johnson
 was followed.  Other than the trial court's two questions, "where are you working" and "how much are you earning per month," the notice requirements were not followed.  Defendant was not given the opportunity to present evidence and be heard regarding the payment order.  In addition, the record does not show the trial court considered defendant's financial affidavit.  The requirements of section 113-3.1 of the Code were not followed.  Further, waiver does not apply even though defendant did not object to the order at sentencing, where the record shows the trial court ordered reimbursement, 
sua
 
sponte
, without warning.  
Love
, 177 Ill. 2d at 564, 687 N.E.2d at 39.

We vacate the order requiring defendant to pay $350 for the services of her court-appointed attorney and remand for a hearing on defendant's ability to pay for such services pursuant to section 113-3.1 of the Code.  In all other respects, we affirm the judgment of the circuit court of Champaign County.

Affirmed in part and vacated in part; remanded with directions.

TURNER and APPLETON, JJ., concur.